UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EUROFINS VENTURES, B.V.,<br><br>                    Plaintiff,<br><br>     v.<br><br>OPERON HOLDINGS, INC., JAMES HUDSON, and PATRICK WEISS,<br><br>                    Defendants. | C.A. No. 08-cv-481 |

## FIRST AMENDED COMPLAINT

Plaintiff Eurofins Ventures, B.V. ("Eurofins Ventures"), by their attorneys Bayard, P.A., and Kasowitz, Benson, Torres & Friedman LLP, hereby allege as follows:

### THE PARTIES

1.   Eurofins Ventures is a private company with limited liability under the laws of The Netherlands with its principal place of business in Breda, The Netherlands.

2.   Defendant Operon Holdings, Inc. ("Operon") is a Delaware corporation with its principal place of business in Huntsville, Alabama.

3.   Upon information and belief, Defendant James Hudson ("Hudson") is an individual residing in Huntsville, Alabama.

4.   Upon information and belief, Defendant Patrick Weiss ("Weiss") is an individual residing in Huntsville, Alabama.

{BAY:01094851v1}

## JURISDICTION & VENUE

5. This Court possesses subject matter jurisdiction pursuant to 9 U.S.C. §§ 1 et seq. and 28 U.S.C. § 1332, insofar as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is properly placed in this District pursuant to 28 U.S.C. § 1391(a) because Operon resides in this district, because a substantial part of the property that is the subject of the action is situated in this district, all parties agreed to arbitration in Wilmington, Delaware, and because the complaint arises out of a contract in which the parties agreed that their rights and obligations thereunder would be construed in accordance with Delaware law.

## INTRODUCTION

7. This is a dispute arising out of the combination of two biotechnology companies (the "Venture"). There are actually two stages to the dispute. Eurofins Ventures first contends that the dispute is covered by a broad arbitration clause, and that the parties must arbitrate their dispute in Delaware. Operon disagrees and maintains that the dispute is not arbitrable. Thus, as a threshold matter, Eurofins Ventures seeks a declaration that the dispute at issue is arbitrable, and an order compelling Operon to arbitrate in Delaware. Alternatively, and in the event that the Court concludes that the dispute is not arbitrable, Eurofins Ventures seeks substantive relief for Operon's breach of the applicable contracts governing the Venture.

## FACTUAL ALLEGATIONS

### The Transaction At Issue

8. Eurofins Ventures' principal operating subsidiaries and Operon's former subsidiaries are in the same business. The Venture, in essence, was intended to combine certain operations in order to take advantage of certain strengths and to offset certain weaknesses of the subsidiaries. As described below, the Venture was effected via a series of transactions, with the central and umbrella instrument being a contract entitled the "Contribution Agreement."

9. Before the Venture, Eurofins Ventures was the 100% owner of Eurofins Genomics B.V. ("Genomics"), a holding company that owned a majority interest in the operating company that actually conducted the business.

10. Before the Venture, Operon was a holding company that owned all or at least a majority interest in its operating companies.

11. The transaction effecting the Venture is comprised of multiple contracts that were attached to, and incorporated into, the Contribution Agreement. As a practical matter, and as relevant to this dispute, the crux of the transaction resulted in the relevant operating companies being placed under the umbrella of Genomics. In turn, and as a result of the transaction, Eurofins Ventures and Operon each own a stake in Genomics. The economics were such that Eurofins Ventures was to and did contribute approximately $10 million of value for its stake in Genomics, and Operon was to contribute $5 million in cash for its stake in Genomics. This dispute arises because of Operon's failure to make its contribution and payment under the Contribution Agreement.

3

12.     The Contribution Agreement sets forth, among other things: (a) the relationships between and among the various parties; (b) the conditions precedent for the consummation of the Venture; (c) the essential terms of the Venture, including capital contributions, financing and other payment obligations; (d) the representations, warranties, covenants, and indemnifications made by Eurofins Ventures, Operon, and their affiliates and subsidiaries; and (e) the parties' remedies for breach.

13.     Negotiations concerning the Contribution Agreement were extensive, and all parties were represented by experienced counsel.

14.     When the Contribution Agreement was executed in November 2007, the parties used the then most recent audited financial statements available for the various entities -- the 2006 year-end audited financial statements -- to assign a preliminary value to the components of the Venture. The parties agreed on a formula to determine the final value of the components of the Venture, based on audited financial statements of the relevant entities as of a date certain, that is, as of September 30, 2007, known as the "Test Date."

15.     Under the Contribution Agreement, if the audited financial statements as of the Test Date resulted in adjustments to the amounts to be paid or received by the parties with respect to the Venture, or to other payments or transfers that related to the joint venture, those changes were to be implemented through post-closing adjustments payable fourteen (14) business days after the approval of the "Test Date Financials" by the Genomics Board of Directors. Notably, Genomics' three person board included Weiss, the CEO and an owner of Operon (who also has been designated as Operon's representative with respect to the Venture).

16. In January and February of 2008, independent auditors certified the accuracy of the financial statements of Genomics, Eurofins Ventures and Operon (and certain of their affiliates) as of September 30, 2007. These certified financial statements became the "Test Date Financials." Based on the previously agreed-upon formula, it was determined that Eurofins Ventures was obligated to pay $2,697,278 to Genomics, and Operon was obligated to pay $1,294,942 to Genomics. It was likewise determined that Eurofins Ventures would pay an additional $659,469 with respect to the acquisition of Operon's Japanese affiliate, and an additional $262,590 with respect to the acquisition of Operon's German affiliate.

The Dispute Under The Contribution Agreement

17. On July 4, 2008, the three-member Genomics Board of Directors, which included Patrick Weiss, the CEO, a principal and the representative of Operon, ratified and approved the Test Date Financials by unanimous written consent. Among other things, and as relevant here, the Test Date Financials agreed to by Operon required Operon to pay an additional $1,294,942 to Genomics. Pursuant to the Contribution Agreement and one of the stock purchase agreements that was attached to the Contribution Agreement, approval of the Test Date Financials by the Genomics board triggered Eurofins Ventures' and Operon's obligation to make the payments set forth above to Genomics on or by June 23, 2008.

18. The Contribution Agreement also contained provisions that set forth the parties' respective rights and obligations in the event one of them failed to make the required contribution by the applicable payment date. Sections 1.01(b)(i) and (ii) provided that if either of the parties failed to make their required contribution, such

5

{BAY:01094851v1}

contribution would be deemed to be made with the defaulting party's stock in Genomics. That is, and by way of example only, if Eurofins Ventures failed to make a required contribution of $1 million, then $1 million worth of Eurofins Ventures' stock in Genomics would be transferred to Operon.

19. On June 23, 2008, in accordance with its obligations under the Contribution Agreement and other contracts that comprised the Venture, and in reliance upon the unanimous approval of the Test Date Financials, Eurofins Ventures transferred $2,697,278 to Genomics. Eurofins Ventures also paid to Operon the $659,469 relating to the acquisition of Operon's Japanese affiliate, and the $262,590 relating to the acquisition of Operon's German affiliate.

20. Operon, however, failed to make its required payment of $1,294,942 to Genomics. In the week following the June 23, 2008 payment date, Operon refused to provide Eurofins Ventures with assurances that it intended to pay the undisputed amount due under the Contribution Agreement and related documents. Instead, Operon proposed alternatives to payment that violated the Contribution Agreement and were completely unacceptable to Eurofins Ventures.

21. On or about July 2, 2008, in light of Operon's failure to make its required payment, Eurofins Ventures exercised its right to have the undisputed payment satisfied by $1,294,942 worth of Operon's stock in Genomics, which amounts to twenty-one (21) of Operon's shares in Genomics. Eurofins Ventures exercised this right by written notice to Operon. Operon refused to deliver the shares, pay the $1,294,942, or in any way honor Eurofins Ventures' rights under the Contribution Agreement.

22.     As a result of Operon's failure to make its $1,294,942 payment or deliver twenty-one (21) of its Genomics shares to Eurofins Ventures, Operon is in breach of the Contribution Agreement and other underlying contracts incorporated therein.

<u>The Contribution Agreement Contains A Broad Arbitration Clause</u>

23.     Section 6.07 of the Contribution Agreement bears the heading "<u>Dispute Resolution</u>." The plain language of Section 6.07 leaves no doubt that the parties intended it to serve as the means for resolving disputes arising out of or relating to the Contribution Agreement and any other agreements concerning the joint venture:

> Any dispute arising out of or relating to this Agreement or any other agreement among the parties referred to herein, including but not limited to, claims for indemnification, shall be resolved in accordance with the procedures specified in this Section 6.07, which shall be the sole and exclusive procedure for the resolution of any such disputes.

24.     The dispute resolution clause includes two sections entitled "Negotiations Between Parties" and "Arbitration." The "Negotiations Between Parties" section (§ 6.07(a)) requires that the parties "attempt in good faith to resolve any dispute arising out of or relating to" the Contribution Agreement, and establishes procedures for doing so, including the exchange of written position statements and a meeting. The "Arbitration" section (§ 6.07(b)) is an exceedingly broad agreement to submit all disputes relating to the Contribution Agreement, and thus necessarily the Venture, to binding arbitration.

25.     The mandatory arbitration agreement contained in section 6.07(b) is exceptionally broad and encompasses any conceivable dispute between the parties that touches on the Contribution Agreement in any way:

> Any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination, or validity hereof or thereof, shall be settled by final and binding arbitration to be conducted by a sole arbitrator.

{BAY:01094851v1}

26.     Section 6.07(b) also outlines -- in great detail -- the procedure for selecting a sole arbitrator, and states that any arbitration shall be held in Wilmington, Delaware:

> The party initiating arbitration shall nominate one arbitrator in a request for arbitration and the other party shall nominate a second in the answer thereto within thirty (30) days of receipt of the request. The two arbitrators so selected shall select a third arbitrator who shall conduct the arbitration. If the answering party fails to nominate its arbitrator within the thirty (30) day period, or if the arbitrators named by the parties fail to agree on the third arbitrator within sixty (60) days, the office of the International Chamber of Commerce in Wilmington, Delaware, United States shall make the necessary appointments of such arbitrator(s). The location of the tribunal shall be in Wilmington, Delaware, United States.

27.     Operon expressly relied upon the dispute resolution clause -- and the mandatory arbitration clause contained therein -- in connection with the very same dispute at issue now. On July 10, 2008, in response to Eurofins Ventures' July 2, 2008 notice that it was exercising its option to collect twenty-one (21) Genomics shares from Operon to satisfy Operon's required contribution, Operon gave written notice to Eurofins Ventures that Operon was "formally disput[ing], pursuant to the Dispute Resolution process described in Section 6.07(a)(i) of the Contribution Agreement," Eurofins Ventures' right to receive twenty-one (21) of Operon's shares in Genomics to satisfy Operon's payment obligation.

28.     On July 22, 2008, Eurofins Ventures responded to Operon's July 10, 2008 notice, in accordance with the provision in the dispute resolution clause requiring a written response within fifteen (15) days.

29.     As required by the dispute resolution clause, Eurofins Ventures and Operon met in New York City on July 30 and July 31, 2008 to attempt to resolve their disputes. During these meetings, Eurofins Ventures stated that if the parties could not work out Operon's failure to make its required contribution, the parties would need to

arbitrate the dispute. Operon responded that the dispute is not in fact arbitrable, notwithstanding the broad arbitration provision in the Contribution Agreement. At the conclusion of the July 31, 2008 meeting, Operon representatives left the meeting and the parties agreed that there were no "next steps" in the negotiations and that the parties' efforts to resolve their disputes has run their full course, without success.

FIRST CLAIM FOR RELIEF
(Declaratory Judgment On Arbitration Against Operon, Hudson, and Weiss)

30.  Eurofins Ventures incorporates paragraphs 1 through 29 of the complaint as if fully set forth herein.

31.  An actual case or controversy exists between Eurofins Ventures and Operon concerning the enforceability of the dispute resolution clause (Section 6.07 of the Contribution Agreement), and of the mandatory arbitration clause contained therein.

32.  Such case or controversy manifested itself when at the July 30 and 31, 2008 meeting, Defendants' representatives stated unequivocally that the parties' dispute was not subject to arbitration of any kind, in any location.

33.  Eurofins Ventures therefore respectfully requests that the Court issue an order declaring that pursuant to Section 6.07 of the Contribution Agreement, the parties' disputes arising out of or relating to Operon's failure to make its required contribution to the Venture are subject to final and binding arbitration to be held in Wilmington, Delaware, including, but not limited to, the dispute between Eurofins Ventures and Hudson and Weiss on the applicable guaranty, as detailed in this complaint.

## SECOND CLAIM FOR RELIEF
(Breach of Contract -- Specific Performance Against Operon to Deliver Genomics Shares)

34. Eurofins Ventures incorporates paragraphs 1 through 33 of the complaint as if fully set forth herein.

35. Eurofins Ventures pleads the following claim for relief in the alternative, and asserts this claim in this forum only in the event that the Court first determines that the instant controversy is not subject to mandatory arbitration pursuant to Section 6.07 of the Contribution Agreement.

36. The Contribution Agreement is a valid, binding and enforceable contract as between Eurofins Ventures and Operon.

37. Eurofins Ventures has performed its obligations under the Contribution Agreement and related agreements, and is not in default thereunder.

38. Operon failed to make its undisputed, required payment to Genomics, as required by the Contribution Agreement and related documents. This failure was a breach of the Contribution Agreement and the related documents.

39. Section 6.12 of the Contribution Agreement entitles Eurofins Ventures, "in addition to the arbitration pursuant to Section 6.07(b)," to seek specific performance of the terms and provisions of the Contribution Agreement in "any court or administrative or governmental authority of competent jurisdiction."

40. Section 1.01(b)(ii) of the Contribution Agreement gives Eurofins Ventures the right -- in the event that Operon fails to pay amounts due under the Contribution Agreement or any related agreements -- to receive the value of Operon's required payment in the form of Operon's stock in Genomics in an amount equal in value to the unpaid required payment.

10

41. In addition to section 6.12 of the Contribution Agreement, Eurofins Ventures is entitled to specific performance because monetary damages are insufficient and there is no adequate remedy at law. Specifically, delivery of twenty-one (21) shares of Genomics stock will give Eurofins Ventures control over the Venture vehicle, Genomics. Considering that Operon has not made its required contribution to the Venture, it has no basis or right to participate in the control or operate the Venture vehicle. Likewise, an award of monetary damages will not give Eurofins Ventures the benefit of its bargain because such relief would not give Eurofins Ventures the additional twenty-one (21) shares of stock in Genomics that it now is entitled to receive.

42. If the Court determines that the dispute is not arbitrable, the Court should issue an order of specific performance requiring Operon to transfer and deliver to Eurofins Ventures twenty-one (21) of Operon's shares in Genomics, in accordance with Section 1.01(b)(ii) of the Contribution Agreement – that is, to sign and deliver to Eurofins Ventures the necessary transfer documents already provided to Operon.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract -- Damages Against Operon)

43. Eurofins Ventures incorporates paragraphs 1 through 42 of the complaint as if fully set forth herein.

44. As with Eurofins Ventures' Second Claim For Relief, it pleads the following claim for relief in the alternative, and only if the Court first determines that the instant controversy is not arbitrable pursuant to Section 6.07 of the Contribution Agreement. Likewise, this claim is asserted in the alternative only in the event that the Court concludes that specific performance is unavailable.

11

{BAY:01094851v1}

45. The Contribution Agreement is a valid, binding and enforceable contract as between Eurofins Ventures and Operon.

46. Operon breached the Contribution Agreement and related documents by failing to contribute to Genomics the required and agreed-upon sum of $1,294,942. Operon further breached the Contribution Agreement by refusing to transfer and deliver to Eurofins Ventures 21 of Operon's shares in Genomics, in accordance with Section 1.01(b)(ii).

47. As a result of Operon's breach, Eurofins Ventures has been damaged in an amount to be proven at trial, but in any event not less than $1,294,942, plus interest and costs.

### FOURTH CLAIM FOR RELIEF
(Breach of Guaranty -- Damages Against Defendants Hudson and Weiss)

48. Plaintiff incorporates paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49. As with Eurofins Ventures' Third Claim For Relief, it pleads the following claim for relief in the alternative, and only if the Court first determines that the instant controversy is not arbitrable pursuant to Section 6.07 of the Contribution Agreement.

50. In a "Guaranty" dated November 2007, and attached as Exhibit S-1 to the Contribution Agreement, Hudson and Weiss agreed, as an inducement to Eurofins Ventures and its affiliates to enter into the Venture, to guaranty absolutely and unconditionally the due and punctual payment of certain "Guaranteed Obligations."

51. These Guaranteed Obligations included, among other obligations, Operon's obligations under the stock purchase agreement attached to the Contribution Agreement as Exhibit P-2.

12

52. Operon breached the Contribution Agreement, and other contracts that comprised the Venture, by failing to pay the required sum of $1,294,942 to Genomics on or before June 23, 2008. Operon further breached Section 1.01(b)(ii) of the Contribution Agreement by refusing to transfer to Eurofins Ventures its Genomics shares in an amount equal to $1,294,942.

53. The Guaranty obligates Hudson and Weiss to, without demand or notice, immediately satisfy Operon's obligations to Eurofins and its affiliates under the Contribution Agreement in the event that Operon fails to perform. The Guaranty requires that Hudson's and Weiss' performance under the Guaranty shall be made without any setoff, counterclaim or deduction whatsoever, and in the same currency and funds as required by Operon.

54. Under the Guaranty, Hudson and Weiss are responsible as guarantors, jointly and severally, for the failed obligations of Operon. Further, Hudson and Weiss actually control Operon, so Hudson and Weiss have the ability to cause Operon to satisfy its obligations under the Contribution Agreement, including the obligation to transfer and deliver to Eurofins Ventures twenty-one (21) of Operon's share of stock in Genomics.

55. Hudson and Weiss are thereby responsible for Operon's failure to deliver $1,294,942 worth of Genomics shares held by Operon, or alternatively Operon's failure to pay $1,294,942.

## REQUEST FOR RELIEF

WHEREFORE, Eurofins Ventures demands judgment as follows:

A. On its First Claim for Relief: an Order (i) declaring that all disputes arising out of or relating to Eurofins Ventures' claim that Operon (and Hudson and Weiss

as guarantors) failed to make its required contribution under the Contribution Agreement, including the claims asserted by Eurofins Ventures herein, are arbitrable and must be arbitrated in Wilmington, Delaware, under the rules of the International Chamber of Commerce, and (ii) compelling Operon, Hudson and Weiss to arbitrate the parties' dispute in accordance with the arbitration clause contained in section 6.07 of the Contribution Agreement, and (iii) granting Eurofins Ventures its attorneys' fees and costs incurred in connection with initiating this action;

B. On its Second Claim for Relief (pleaded only in the alternative in the Court concludes the dispute is not arbitrable): an order requiring Operon to transfer and deliver to Eurofins Ventures twenty-one (21) of Operon's shares in Genomics, that is to execute and deliver to Eurofins Ventures the necessary transfer documents already provided to Operon;

C. On its Third Claim for Relief (pleaded only in the alternative, and only if the Court concludes that the dispute is not arbitrable and that specific performance is unavailable): damages in an amount to be proven at trial, but in any event not less than $1,294,942, plus interest and costs;

D. On its Fourth Claim for Relief (pleaded only in the alternative, and only if the Court concludes that the dispute is not arbitrable and that specific performance is unavailable): an order directing Hudson and Weiss to cause Operon to transfer and deliver to Eurofins Ventures 21 shares of Operon's stock in Genomics, or alternatively damages in an amount to be proven at trial, but in any event not less than $1,294,942, plus interest and costs;

E. Awarding Eurofins Ventures such other and further relief as this Court deems just and proper.

15

| | |
|---|---|
| Dated: August 5, 2008 | BAYARD, P.A. |
| | |
| | /s/ Stephen B. Brauerman (sb4932) |
| | Richard D. Kirk (rk0922) |
| OF COUNSEL: | Stephen Brauerman (sb4952) |
| | 222 Delaware Avenue, Suite 900 |
| Daniel P. Goldberg | P.O. Box 21130 |
| Michael Hanin | Wilmington, Delaware 19899 |
| Kasowitz, Benson, Torres & Friedman LLP | (302) 655-5000 |
| 1633 Broadway | |
| New York, New York 10019 | *Attorneys for Plaintiff Eurofins* |
| (212) 506-1700 | *Ventures BV* |