## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EUROFINS VENTURES, B.V.,     )
)
       Plaintiff,    )
)
     vs.        )     Civil Action No. 08-481-MLC
)
OPERON HOLDINGS, INC.,    )
JAMES HUDSON, and    )
PATRICK WEISS,    )
)
      Defendants.   )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

OF COUNSEL:

Stephen C. Carlson
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

George E. Knox, Jr.
P. Scott Arnston
Jeffrey T. Kelly
Lanier Ford Shaver & Payne, P.C.
200 West Side Square
Suite 500, P.O. Box 2087
Huntsville, AL 35804
(256) 535-1100

Dated: August 22, 2008

Philip A. Rovner (#3215)
Suzanne M. Hill (#4414)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
shill@potteranderson.com

*Attorneys for Defendants*
*Operon Holdings, Inc., James Hudson*
*and Patrick Weiss*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ..................................................... 1

SUMMARY OF THE ARGUMENT ................................................. 2

STATEMENT OF THE FACTS.................................................................... 3

      A.    The Parties' Agreement................................................... 4

      B.    The Parties' Disputes........................................................ 5

      C.    The Parties' Dispute Resolution Session........................................... 7

ARGUMENT      .................................................................... 9

I.    Introduction ..................................................................... 9

II.    This action does not present a "case of actual controversy," but instead fails all three aspects of the test for a ripe declaratory judgment claim ....................................................... 10

      A.    Because the declaratory judgment claim is premature, the parties do not presently have "adverse legal interests." ........... 13

            (i)    The 60-day negotiation process specified in the contract is a condition precedent to arbitration, and that condition has not been satisfied. ............................. 14

            (ii)    There has been no "unequivocal refusal to arbitrate." ......... 19

      B.    The requested declaratory judgment also could not provide specific, conclusive relief.................................................. 24

      C.    The requested decree would have no real utility............................. 27

III. Even if the case presented a justiciable controversy, declining to adjudicate the declaratory judgment claim would be appropriate........................................................................... 28

CONCLUSION     ............................................................................ 34

# TABLE OF AUTHORITIES

### CASES

*Abbott Labs v. Gardner*,
   387 U.S. 136 (1967) ..................................................................... 12

*Armstrong World Indus., Inc. v. Adams*,
   961 F.2d 405 (3d Cir. 1992)................................................. 11-12, 14, 25

*Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*,
   68 F.3d 409 (11th Cir. 1995) ......................................................... 11

*Bell Atlantic Corp. v. MFS Communications Company, Inc.*,
   901 F. Supp. 835 (D. Del. 1995)............................................. 11-13, 29

*Breitigan v. State of Delaware*,
   C.A. No. 02-1333-GMS, 2003 WL 21663676 (D. Del., July 16, 2003) ........... 25

*Califano v. Sanders*,
   430 U.S. 99 (1977)...................................................................... 13

*Delaware State Univ. Student Housing Found. v. Ambling Mgmt. Co.*,
   C.A. No. 07-610-MPT, 2008 WL 2278460 (D. Del., June 4, 2008)........... 29-30

*E.I. DuPont De Nemours & Co. v. Great Lakes Chem. Corp.*,
   383 F. Supp. 2d 642 (D. Del., 2005)........................................... 14-16

*Equal Employment Opportunity Comm'n v. Univ. of Pennsylvania*,
   850 F.2d 969 (3d Cir. 1988)........................................................... 31

*Ex parte Celtic Life Ins. Co.*,
   834 So.2d 766 (Ala. 2002)............................................................. 33

*FMC Corp. v. AMVAC Chem. Corp.*,
   379 F. Supp. 2d 733 (E.D. Pa. 2005)................................................ 31

*HIM Portland, L.L.C. v. DeVito Builders, Inc.*,
   317 F.3d 41 (1st Cir. 2003)........................................................... 16

*Hood v. Terminix Int'l Co., L.P.*,
   C.A. No. C-06-0024 SBA, 2006 WL 1329678 (N.D. Cal., May 15, 2006) ...... 18

*In re Pisces Foods, L.L.C.*,
        228 S.W.3d 349 (Tex. Ct. App. 2007) .................................................. 18

*In re Prudential Ins. Co. of America Sales Practice Litigation All Agent
        Actions*,
        133 F.3d 225 (3d Cir. 1998)................................................................ 27

*In re Student Finance Corp.*,
        C.A. No. 04-1551-JJF, 05-165-JJF, 2007 WL 4643881 (D. Del., May 25,
        2007) .................................................................................................. 20

*Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc.*,
        416 F. Supp. 2d 1048 (E.D. Pa. 2006) ................................................ 31

*Kemiron Atlantic, Inc. v. Aguakem Int'l, Inc.*,
        290 F.3d 1287 (11th Cir. 2002) .......................................................... 17

*Local Joint Executive Bd. of Las Vegas, Bartenders Union Local 165,
        Culinary Workers Local Union #226 v. Exber, Inc.*,
        994 F.2d 674 (9th Cir. 1993) .............................................................. 23

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
        247 F.3d 44 (3d Cir. 2001)................................................................... 27

*Merck & Co., Inc. v. Apotex, Inc.*,
        C.A. No. 06-5789 (MLC), 2007 WL 4082616 (D.N.J., Nov. 15, 2007) ...... 10-11

*Nutrasweet Co. v. Ajinomoto Co., Inc.*,
        423 F. Supp. 2d 450 (D. Del. 2006) .................................................... 11

*Old Republic Ins. Co. v. Lanier*,
        644 So.2d 1258 (Ala. 1994) ................................................................ 32

*PaineWebber, Inc. v. Faragalli*,
        61 F.3d 1063 (3d Cir. 1995)............................................................ 21-23

*Philadelphia Fed'n of Teachers v. Ridge*,
        150 F.3d 319 (3d Cir. 1998)............................................................ 12-13

*R&F, LLC v. Brooke Corp.*,
        No. 07-2175-JWL, 2008 WL 294517 (D. Kan., Jan. 31, 2008) ............ 17

*Restaurant Development Corp. of La., L.L.C. v. Standard Bldg. Co., Inc.,*
    C.A. No. 07-3771, 2007 WL 2284559 (E.D. La., Aug. 7, 2007) ...................... 17

*S.C. Johnson & Son, Inc. v. Dowbrands, Inc.,*
    167 F. Supp. 2d 657 (D. Del. 2001)................................................................... 11

*State Auto Insurance Companies v. Summy,*
    234 F.3d 131 (3d Cir. 2001)............................................................................. 29

*Step-Saver Data Systems, Inc. v. Wyse Technology,*
    912 F.2d 643 (3d Cir. 1990)................................................................ 13, 24, 27

*Trans World Airlines, Inc. v. Air Line Pilots Ass'n,*
    172 F.3d 921, No. 98-7035, 1998 WL 720712 (D.C. Cir., Sept. 30, 1998)
    (unpublished table decision) ........................................................................... 24

*Wilderman v. Cooper & Scully, P.C.,*
    428 F.3d 474 (3d Cir. 2005)............................................................................. 31

*Wyatt, Virgin Islands, Inc. v. Government of the Virgin Islands,*
    385 F.3d 801 (3d Cir. 2004).................................................................11-13, 27

## STATUTES AND RULES

28 U.S.C. § 2201(a).............................................................................. 2, 11, 29

Fed. R. Civ. P. 12(b)(1)............................................................................... 10

## NATURE AND STAGE OF PROCEEDINGS

This is a declaratory judgment action filed on August 1, 2008. (D.I.1.). The plaintiff, Eurofins Ventures, B.V. ("Eurofins"), seeks a declaration that certain disputes with the defendants, Operon Holdings, Inc. ("Operon"), James Hudson ("Hudson") and Patrick Weiss ("Weiss") are subject to arbitration. The complaint, as amended on August 5, also includes other claims, but those claims expressly are alternative or contingent claims, to be considered only if Eurofins does not prevail on its declaratory judgment claim. (First Amended Complaint, D.I. 4, ¶¶ 35, 44, 49).

The defendants' motion to dismiss is a factual challenge to subject matter jurisdiction over the declaratory judgment claim. Alternatively, the defendants request that the Court exercise its discretion and decline to adjudicate the declaratory judgment claim. If the Court dismisses the declaratory judgment claim on either basis, this also would dispose of the remaining alternative claims. Finally, although the Court need not reach this issue, the individual defendants also move for dismissal based on lack of personal jurisdiction.

## SUMMARY OF THE ARGUMENT

1.    The Court lacks subject matter jurisdiction over the declaratory judgment claim filed by Eurofins, because the Court is not presented with a "case of actual controversy." 28 U.S.C. § 2201(a). The question whether any of the parties' potential claims are subject to arbitration is not yet ripe, because a contractually mandated 60-day negotiation period has not yet expired. Eurofins seeks to avoid this condition precedent to arbitration by claiming that Operon has unequivocally refused to arbitrate any aspect of the parties' disputes. This allegation is inaccurate, and Eurofins' attempt to obtain a declaratory judgment on arbitrability is premature. For that reason, the "adversity of interest" test for ripeness is not satisfied here, and there is no justiciable controversy.

2.    Although it is unnecessary to reach these issues, the declaratory judgment claim also is not ripe because, under the circumstances presented here, the Court could not provide sufficiently specific relief through a conclusive decree, and the requested judgment would not be of any real utility. Eurofins' request for a decree on arbitrability is expressly limited to one aspect of the parties' disputes. Although not referenced in Eurofins' complaint, several other disputes were being addressed in the required negotiation phase before Eurofins filed its lawsuit. The decree sought by Eurofins would be unspecific and inconclusive because it would leave open the question whether other disputes between the parties, and specific

claims arising from those disputes, are subject to arbitration. At any rate, there would be no hardship to the parties if they were required to wait until the end of their agreed 60-day negotiation period before learning whether any unresolved claims are arbitrable.

3.    Although it also is unnecessary for the Court to reach this issue, whether to exercise jurisdiction over a declaratory judgment claim is a matter for the Court's discretion. Even if jurisdiction existed here, this still would be an appropriate case for declining to adjudicate a declaratory judgment claim. In addition to the various ripeness concerns, there is ample basis for concluding that this is an anticipatory action filed as "forum shopping" to avoid a lawsuit in what Eurofins clearly regards as an unfavorable forum.

## STATEMENT OF THE FACTS

Operon and Eurofins are parties to a Contribution Agreement that is the central contract in a transaction that combined biotechnology companies owned by the parties. (Contribution Agreement, Exhibit A to Declaration of Richard J. Marsden). Qiagen North American Holdings, Inc. ("QNA"), which has not been made a party to this action, also is a party to the Contribution Agreement. (*Id.*). As a result of the parties' transaction, Eurofins and Operon share ownership of Eurofins Genomics BV ("Genomics"). (*Id.*, ¶ 7).

### A.    The Parties' Agreement.

Section 6.07 of the Contribution Agreement, headed "Dispute Resolution," specifies two procedures for resolving disputes between the parties. Subsection (a) of Section 6.07, headed "Negotiation Between Parties," states that the parties "shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between Eurofins Ventures, Operon and QNA." (Contribution Agreement, § 6.07(a)(i)). If a dispute is not resolved in the normal course of business, the Agreement provides that any party may give another party a written notice or position statement concerning the dispute. (*Id.*). The party receiving the notice must provide a written response within 15 days, and a meeting of the parties' designees must occur within 30 days. (*Id.*). In addition to an initial meeting within 30 days, the parties' designees are to meet "thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute." (*Id.*).

The Agreement provides for a 60-day negotiation period:

> [I]f the matter has not been resolved by [the parties' designated representatives] within sixty (60) days of the disputing party's notice, or if the parties fail to meet within thirty (30) days, either party may initiate arbitration as provided hereinafter.

(Contribution Agreement, § 6.07(a)(ii)). Subsection (b) of Section 6.07, headed "Arbitration," states that "[a]ny controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof or

4

thereof, shall be settled by final and binding arbitration to be conducted by a sole arbitrator." (*Id.*, § 6.07(b)).

**B.    The Parties' Disputes.**

Certain post-transaction disputes between the parties are referenced in a series of letters beginning in June of 2008. (Exhibits B through J). First, as a part of the parties' transaction, a Eurofins affiliate, Eurofins Finance, S.A. ("Eurofins Finance") committed to lend up to $20 million to Genomics pursuant to a Mezzanine Debt Agreement. (Contribution Agreement, ¶ 8(e)). On June 11, Eurofins Finance sent Genomics a letter stating that Genomics was in default on the debt, and demanding payment of over $14 million. (Letter of June 11, 2008, Ex. B). Eurofins Finance repeated its demand in a second letter to Genomics on June 26th. (Letter of June 26, 2008, Ex. C).

On July 2, Eurofins sent Operon a letter stating that Operon had failed to pay approximately $1.3 million to Genomics as a required adjustment to its capital contribution, and that this failure resulted in a forfeiture of a portion of Operon's shares in Genomics. (Letter of July 2, 2008, Ex. D). The letter also stated that, because of the reduction in Operon's ownership interest in Genomics, Operon was no longer entitled to representation on the Genomics board. (*Id.*). In a subsequent letter, Eurofins clarified that, rather than the Operon shares being forfeited, Eurofins was exercising a right to purchase the shares. (Letter to Operon, July 8,

2008, Ex. E).   On July 8, Eurofins sent Genomics a letter that also demanded immediate payment of approximately €8 million loaned to Genomics under two intercompany credit agreements. (Letter to Genomics of July 8, 2008, Ex. F).

On July 10, Operon sent Eurofins a letter informing it that, "pursuant to the Dispute Resolution process described in Section 6.07(a)(i) of the Contribution Agreement," Operon disputed the forfeiture of its shares in Genomics. (Letter of July 10, 2008, Ex. G).   Operon stated that the capital contribution adjustment referenced by Eurofins was not owed because it was subject to an agreed offset. (*Id.*).   Operon also informed Eurofins that "there are other issues to be addressed through the Dispute Resolution process." (Letter of July 10, 2008, Ex. G, p. 2). The letter discussed what Operon viewed as the misuse of its $5 million capital contribution, and the failure by Eurofins to allow Genomics to use available resources to service the mezzanine debt owed to Eurofins Finance. (*Id.*).

On July 22, Eurofins responded with a letter in which it again took the position that Operon owes the adjusted capital contribution of approximately $1.3 million.   (Letter of July 22, 2008, Ex. H).   Eurofins suggested that a dispute resolution session occur in New York between July 27 and August 1.   (*Id.*, p. 4).

By letter of July 23, Operon notified Eurofins that Operon intends to demand full indemnity for any losses or damages resulting from the failure by Genomics to perform its obligations under the Mezzanine Debt Agreement or an intercompany

credit agreement. (Letter of July 23, 2008, Ex. I). Operon stated that indemnity would be sought pursuant to Section 5.01 of the Contribution Agreement, which states that Eurofins must indemnify Operon and its shareholders against any and all losses or damages "of any kind of character . . . arising out of or in any manner incident, relating or attributable to . . . [a]ny failure by any Eurofins company to perform or observe . . . in full, any material covenant, agreement or condition to be performed or observed by it under this Agreement [or] any other Eurofins Agreement." (Contribution Agreement, § 5.01). Eurofins responded by denying that an indemnity claim could have merit. (Letter of July 28, 2008, Ex. J).

### C.    The Parties' Dispute Resolution Session.

Representatives of Eurofins and Operon met in New York for a dispute resolution session on July 30 and 31. At the beginning of the session, counsel for both parties orally agreed that the meeting was a settlement conference and that nothing said by the representatives of either party could be used in any subsequent proceeding. (Declaration of Richard Marsden). Eurofins, however, filed the instant suit the day after the session ended, and included in its complaint allegations concerning statements allegedly made at the meeting. The complaint alleges:

> 29.    As required by the dispute resolution clause, Eurofins Ventures and Operon met in New York City on July 30 and 31, 2008 to attempt to resolve their disputes. During these meetings, Eurofins Ventures stated that if

> the parties could not work out Operon's failure to make
> its required contribution, the parties would need to
> arbitrate the dispute. Operon responded that the dispute
> is not in fact arbitrable, notwithstanding the broad
> arbitration provision in the Contribution Agreement. At
> the conclusion of the July 31, 2008 meeting, Operon
> representatives left the meeting and the parties agreed
> that there were no "next steps" in the negotiations and
> that the parties' efforts to resolve their disputes has [sic]
> run their full course, without success.

(First Amended Complaint, D.I.4, ¶ 29). The complaint further alleges that

Operon's "representatives stated unequivocally that the parties' dispute was not

subject to arbitration of any kind, in any location." (*Id.*, ¶ 32).

Contrary to the allegations in the complaint, no Operon representative stated

that the parties' dispute concerning payment of an adjusted capital contribution

would not be subject to arbitration. (Marsden Declaration). Operon's

representatives never addressed whether any specific aspect of the parties' disputes

would be arbitrable. (*Id.*). Operon's attorneys instead stated that Operon did not

concede that the arbitration provision covered all potential claims, and that relief

may also be available in court. (*Id.*). Also, while it is correct that the parties did

not identify at the meeting any "next steps" in the negotiation process, there was no

statement by either party to the effect that their efforts to resolve their disputes had

"run their full course." (*Id.*). Finally, while the complaint alleges that "Operon

representatives left the meeting," the parties actually mutually agreed to conclude

the session. (*Id.*).

## ARGUMENT

### I.    Introduction.

This is a premature declaratory judgment action that requests the Court to determine whether one of several disputes between the parties is subject to arbitration.   Under the parties' contract, *no* dispute can be arbitrable unless it remains unresolved at the end of a mandatory 60-day negotiation period.  Without alerting the Court to the existence of the 60-day provision, or the existence of disputes other than the one referenced in the complaint, Eurofins filed this suit midway through the negotiation period.   Eurofins seeks to circumvent the negotiation process it agreed to in the contract, and preemptively force arbitration. This it cannot do.

Eurofins alleges that, during settlement talks that were agreed to be confidential, Operon's counsel stated unequivocally that Operon refused to arbitrate any aspect of the parties' disputes.  In addition to being a breach of the parties' confidentiality agreement, these allegations are incorrect.  As discussed below, Eurofins has no valid basis for avoiding the negotiation provision in the parties' contract, and no valid basis for an argument that the arbitrability of any potential claim presents a ripe issue at this point.

Eurofins' claim also fails the remaining aspects of the test for a ripe declaratory judgment claim.   The requested judgment could not provide

sufficiently specific relief, would not conclusively resolve the question of what aspects of the parties' disputes are arbitrable, and would have no utility to the parties at a time when they are required under their contract to attempt to resolve any disputes short of arbitration. Under these circumstances, Eurofins is merely requesting an impermissible advisory opinion on arbitrability. Finally, although the Court need not decide this issue, it would be appropriate for the Court to decline to exercise jurisdiction over the declaratory judgment claim even if the claim presented a justiciable controversy.

## II.    This action does not present a "case of actual controversy," but instead fails all three aspects of the test for a ripe declaratory judgment claim.

The defendants' motion under Rule 12(b)(1) factually challenges subject matter jurisdiction over Eurofins' declaratory judgment claim. As this Court has noted, the Rule 12(b)(1) motion should be considered first because, if the Court determines it does not have subject matter jurisdiction, the other defenses will be moot. *Merck & Co., Inc. v. Apotex, Inc.*, 2007 WL 4082616 at *3 (D. N.J. 2007). Now that the defendants have attacked subject matter jurisdiction by supporting their motion with an affidavit and other evidence, the allegations in the complaint are not presumed to be true, and Eurofins has the burden of proving that jurisdiction exists. *Id.* If Eurofins presents evidence of its own, "the existence of disputed material facts will not preclude the Court from evaluating the merits of jurisdictional claims." *Id.* at *4. The Court "may consider affidavits, depositions,

10

and testimony outside of the claim to resolve factual issues, and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Subject matter jurisdiction over the declaratory judgment claim is absent because an actual controversy is absent. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that courts "may" issue declaratory relief in a "case of actual controversy." 28 U.S.C. § 2201(a). The actual controversy requirement is coextensive with the "case or controversy" requirement in Article III, § 2 of the U. S. Constitution. *See, e.g., Wyatt, Virgin Islands, Inc. v. Government of the Virgin Islands*, 385 F.3d 801, 805-806 (3d Cir. 2004); *Bell Atlantic Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 842, n.2 (D. Del. 1995).

An actual controversy must exist at the time a declaratory judgment action is filed. *See, e.g., Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Nutrasweet Co. v. Ajinomoto Co., Inc.*, 423 F. Supp.2d 450, 455 (D. Del. 2006); *Merck v. Apotex*, 2007 WL 4082616, at *4 (recognizing that the party claiming jurisdiction "must establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since"). In the absence of an actual controversy, the case must be dismissed for lack of subject matter jurisdiction. *See, e.g., Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992); *S.C. Johnson & Son, Inc. v. Dowbrands, Inc.*, 167 F. Supp. 2d 657, 668 (D. Del. 2001).

The requirements for an "actual controversy" are as follows:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Wyatt v. Virgin Islands*, 385 F.3d at 806 (citation omitted). *See also, Armstrong v. Adams*, 961 F.2d at 410 ("To satisfy Article III's 'case or controversy' requirement, an action must present '(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution.' ").

Declaratory judgment actions frequently "implicate the justiciability doctrine of ripeness." *Bell Atlantic v. MFS Commc'ns*, 901 F. Supp. at 842. If an action fails under the ripeness doctrine, it also fails to satisfy the case or controversy requirement. *See, e.g., Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323, n.3 (3d Cir. 1998); *Armstrong v. Adams*, 961 F.2d at 411. The Supreme Court has established a two-part test for determining the ripeness of a declaratory judgment claim, requiring courts to examine "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 149, (1967), overruled on other grounds,

*Califano v. Sanders*, 430 U.S. 99, 105 (1977).  In *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990), the Third Circuit refined this test by formulating a three-part inquiry focusing on (1) the adversity of the parties' interest; (2) the conclusiveness of the requested declaratory judgment, and (3) the practical help, or utility, of the judgment.  912 F.2d at 647.  *See also Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d at 323, n.4.  An examination of these factors demonstrates that Eurofins' request for declaratory relief fails to satisfy a single aspect of the test for a ripe claim.

### A.    Because the declaratory judgment claim is premature, the parties do not presently have "adverse legal interests."

The requirement that parties to a declaratory judgment action have "adverse legal interests" arises from the need for a controversy to be "definite and concrete before it can be justiciable."  *Wyatt v. Virgin Islands*, 385 F.2d at 806.  To be ripe, the controversy "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries and some useful purpose to be achieved in deciding them."  (*Id.*) (citation omitted).  The mere fact that the parties "disagree on a legal issue does not create adversity of interest or a justiciable controversy."  *Bell Atlantic v. MFS Commc'ns*, 901 F. Supp. at 846.  In fact, "[i]n almost any unripe case, the parties have at minimum a difference of opinion, even diametric opposition, as to a legal issue."  *Id.*  In cases "[w]here the plaintiff's action is based on a contingency, it is unlikely that the

13

parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Armstrong v. Adams*, 961 F.2d at 411-12.

> **(i)    The 60-day negotiation process specified in the contract is a condition precedent to arbitration, and that condition has not been satisfied.**

Here, Eurofins seeks a declaration concerning the enforceability of an arbitration provision even though, under the plain language of the parties' contract, neither party even has the right to initiate arbitration unless and until a dispute remains unresolved at the expiration of an agreed 60-day negotiation period. The contract states:

> [I]f the matter has not been resolved by [the parties' designees] within sixty (60) days of the disputing party's notice [of a dispute], or if the parties fail to meet withinthirty (30) days, either party may initiate arbitration as provided hereinafter.

(Contribution Agreement, Section 6.07(a)(ii)).

Operon sent Eurofins written notice of a dispute on July 10, 2008, which means the contractual 60-day negotiation period would expire on September 8. Eurofins nonetheless filed this declaratory judgment action on August 1, less than halfway through the negotiation period. The action is premature and must be dismissed for that reason alone.

A contract provision similar to the one at issue here was considered in *E.I. DuPont De Nemours & Co. v. Great Lakes Chemical Corp.*, 383 F. Supp. 2d 642

(D. Del. 2005), a case where the defendant argued that claims for breach of contract and declaratory relief were not ripe, because the plaintiff had failed to engage in a mandatory negotiation and mediation process before filing the action. The parties' agreement stated:

> Dispute Resolution. In the event of any dispute or disagreement between the parties concerning the provisions of this Agreement, the dispute, upon written request of either party, shall be referred to the representatives of the parties for a decision. Those representative [sic] shall meet in good faith to resolve the dispute. If, after thirty (30) days, the Parties' representatives cannot resolve the dispute, then the parties agree that they will submit to a third party mediation in a mutually acceptable location. Only upon a failed mediation as determined by either Party will either Party be free to consider court intervention.

383 F. Supp. 2d at 648.

The plaintiff in *DuPont v. Great Lakes* responded to the defendant's argument by pointing out that the agreement's dispute resolution process had to be initiated by a written request, which had not occurred. 383 F. Supp. 2d at 648. The court agreed that, because neither party had made a written request to commence the process, the condition precedent to arbitration was not triggered "in these circumstances." *Id.* Since the contractual duty to complete the dispute resolution process never arose, the defendant's motion to dismiss pursuant to the ripeness doctrine was denied. *Id.*

Unlike the provision in *DuPont v. Great Lakes*, the negotiation provision in the agreement between Eurofins and Operon indisputably was triggered. Operon expressly invoked the negotiation provision when it sent its notice letter to Eurofins, and Eurofins cited the same provision in its response. By its plain language, the negotiation provision establishes a condition precedent to arbitration, and the question whether a particular claim is arbitrable could present an actual controversy only if the 60 days expired without a negotiated resolution. While the parties may have a present disagreement concerning the scope of the arbitration clause, whether that disagreement will ripen into an actual controversy is contingent on the outcome of the contractually mandated negotiation process.

Eurofins' claim for declaratory relief is, in effect, a motion to compel arbitration. In cases such as this one where the parties' contract established a condition precedent to arbitration, and that condition was not satisfied, numerous courts have ruled that an attempt to force arbitration is premature. *See HIM Portland, L.L.C. v. DeVito Builders, Inc.*, 317 F.3d 41, 43-44 (1st Cir. 2003) ("[A]rbitration is a matter of contract law and consequently 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'. . . . Under the plain language of the contract, the arbitration provision of the agreement is not triggered until one of the parties requests mediation. . . . Where contracting parties condition an arbitration agreement upon the satisfaction

16

of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration and staying proceedings under the FAA."); *Kemiron Atlantic, Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1290-91 (11th Cir. 2002) ("[U]nder the plain language of the contract, to invoke the arbitration provision, either party must take two steps: first, Aguakem or Kemiron must request mediation and provide notice of the request to the other party. If the mediation subsequently fails, arbitration still cannot take place. The aggrieved party must then take a second step, by providing additional notice, under the terms of the contract, that they wish to pursue arbitration. Then, and only then, is the arbitration provision triggered. . . . Because neither party requested mediation, the arbitration provision has not been activated and the FAA does not apply."); *R&F LLC v. Brooke Corp.*, 2008 WL 294517, at *2 (D. Kan. 2008) ("The arguable futility of mediation is of no consequence. This is not a case in which the court is exercising its inherent powers to require the parties to mediate their dispute. Here, the court is simply enforcing a mediation provision to which [the plaintiff] itself agreed. . . . The mediation provision . . . expressly required the parties to engage in mediation before filing this lawsuit. Consequently, [the plaintiff] is not entitled to proceed with litigating this case at all until mediation has been conducted."); *Restaurant Dev. Corp. of La., L.L.C. v. Standard Bldg. Co., Inc.*, No. Civ. A. 07-3771, 2007 WL 2284559, at *3 (E.D. La., Aug. 7, 2007) ("Under the contract,

17

mediation between the parties will occur as a condition precedent to any arbitration. . . . Accordingly, the motion to compel arbitration is DENIED as premature. . . ."); *Hood v. Terminix Int'l Co., L.P.*, C.A. No. C-06-0024 SBA, 2006 WL 1329678, at *1 (N.D. Cal., May 15, 2006) ("Plaintiff maintains that the parties' failure to submit to mediation renders this [motion to stay pending arbitration] premature.  Defendant agrees to participate in mediation, however, requests the Court to rule on this Motion first.  The Court declines to render what would be tantamount to an advisory opinion. . . . A mediation between the parties may resolve their dispute.  The parties' agreement to arbitrate is only triggered by an unsuccessful mediation.  If and when that occurs, disputes regarding arbitration will be ripe for the adjudication by this Court."); *In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 353 (Tex. Ct. App. 2007) ("Other courts have upheld decisions that arbitration could not be compelled when parties who were contractually required to mediate or follow other grievance procedures as a precondition to arbitration had failed to do so. . . . Relator has failed to comply with the terms of its contract with Jimenez setting up preconditions for arbitration. . . . On the undisputed record presented here, the trial court did not abuse its discretion by refusing to compel arbitration.").

### (ii)    There has been no "unequivocal refusal to arbitrate."

As in the cases cited above, the condition precedent to arbitration in this case has not been satisfied, which means that Eurofins' attempt to obtain a ruling on arbitrability at this point is premature. Although Eurofins' complaint quotes some portions of the Agreement's "Dispute Resolution" section, the complaint fails even to reference the 60-day negotiation period specified in the same provision. It is clear, however, that Eurofins recognizes that the negotiation process agreed to in the contract is a precondition to arbitration, because the complaint attempts to allege facts allowing Eurofins to circumvent the process. Specifically, the complaint alleges that, at the parties' settlement conference, Operon's representatives "stated unequivocally that the parties' dispute was not subject to arbitration of any kind, in any location," and that "the parties' efforts to resolve their disputes has [sic] run their full course, without success." (First Amended Complaint, D.I.4, ¶¶ 29, 32). In addition to being improper, these allegations are false.

At the beginning of the meeting, held expressly in accordance with the Dispute Resolution process specified in the parties' agreement, counsel for the parties orally agreed that the meeting was a settlement conference and that any statements made at the conference could not be used by either party in any

19

subsequent proceeding. Of course, the importance of assuring the confidentiality

of statements made during settlement negotiations is well recognized:

> [T]here is well-established judicial policy protecting the
> confidentiality of the settlement process. The judicial
> system encourages the resolution of disputes by
> mediation and settlement. It is axiomatic that the
> assurance of confidentiality for communications made
> during the course of settlement negotiations is a critical
> component of the process. Particularly, in the event that
> settlement discussions do not resolve the dispute, the
> parties must be able to litigate their claims in the
> courtroom without the pall-like presence of confidential
> negotiation statements influencing the arguments.
>
> . . . Regardless of any effect of the content, the courts
> must remain blind to any confidential statements made
> during the course of settlement negotiations, particularly
> where the parties have guaranteed non-disclosure and
> confidentiality in an agreement.

*In re Student Finance Corp.*, C.A. Nos. 04-1551-JJF, 05-165-JJF, 2007 WL

4643881, at *1 (D. Del., May 25, 2007).

    This case illustrates exactly why statements made at a settlement conference

should be kept confidential, particularly when there has been an express agreement

to preserve confidentiality. Here, Eurofins not only misuses statements allegedly

made at the settlement conference, it misrepresents what was said. Operon's

representatives never stated that the parties could have no disputes that would be

subject to arbitration (an issue that, under the contract, could not even *be* an issue

until expiration of the 60-day negotiation period). They did not even state that the

dispute concerning payment of an adjustment to Operon's capital contribution would not be subject to arbitration.   In fact, Operon's representatives never addressed the arbitrability of any specific aspect of the parties' disputes.

In response to several references by Eurofins' counsel to a potential arbitration if the settlement negotiations were unsuccessful, Operon's counsel instead stated that there could be disputes or claims that would not be covered by the arbitration provision, and that Operon did not concede that it could have no remedies in court, including an Alabama court.   Contrary to the allegations in the complaint, Operon's representatives also never made any statement to the effect that the negotiation process had run its full course.   Although both parties agreed that there were no "next steps" to be identified at the conclusion of the meeting, neither party made any statement  that the negotiation process was over.

By alleging that Operon "stated unequivocally that the parties' dispute was not subject to arbitration of any kind," Eurofins is attempting to plead its way out of the mandatory negotiation process and into arbitration.   Eurofins used the word "unequivocal" because the legal standard for determining whether a cause of action has accrued under the Federal Arbitration Act is whether there has been an "unequivocal refusal to arbitrate."   This standard was recognized in *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995), where the issue was whether a motion to compel arbitration was time-barred.

The party opposing arbitration in *PaineWebber v. Faragalli* argued that the motion to compel arbitration was untimely because, long before arbitration was sought, the party had filed a state law writ of summons against the party now seeking arbitration, and had sent that party's lawyers a draft complaint during settlement negotiations. 61 F.3d at 1065-66. In holding that the motion to compel arbitration was timely, the Third Circuit observed:

> Although we do not appear to have passed on the precise issue of when a cause of action accrues under the FAA, we have held in the context of a petition to compel arbitration under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), that such a cause of action "arises when [one of the parties] takes an unequivocal position that it will not arbitrate" . . . .
>
> We find this doctrine equally applicable to a petition to compel arbitration under the FAA, which provides relief only to those persons "*aggrieved* by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. § 4 (emphasis added). Clearly, unless the respondent has resisted arbitration, the petitioner has not been "aggrieved" by anything. The reason for this rule, though little discussed, is evident: unless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause, no breach of contract has occurred, no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner — hence, the petitioner cannot claim to be "aggrieved" under the FAA.
> Moreover, it is doubtful that a petition to compel arbitration before the "adverse" party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance.

61 F.3d at 1067 (citations omitted).

Applying the "unequivocal refusal to arbitrate" standard to the facts of that case, the court in *PaineWebber v. Faragalli* concluded that filing a state law writ of summons does not constitute a rejection of arbitration, "[n]or does providing an adversary with a draft complaint which has not been filed in court constitute an unequivocal refusal to arbitrate because it does not rule out a willingness to arbitrate." 61 F.3d at 1066. The court stressed that a party must instead take an action that is an "unambiguous and unequivocal" or "clear" refusal to arbitrate. 61 F.3d at 1068. *See also Local Joint Executive Bd. of Las Vegas, Bartenders Union Local 165, Culinary Workers Local Union #226 v. Exber, Inc.*, 994 F.2d 674, 675-76 (9th Cir. 1993) (noting that courts have "equated 'unequivocal refusal' and 'makes it clear' with an express refusal to  arbitrate"). The *Faragalli* court concluded that the party opposing arbitration in that case had "neither unambiguously nor unequivocally refused to arbitrate" until, at the very earliest, he actually filed his complaint in court. 61 F.3d at 1069-70.

In this case, Eurofins' claim that there was an "unequivocal refusal to arbitrate" is not based on the filing of a complaint or similar document in court. Eurofins also does not claim that Operon took any other action manifesting an unequivocal refusal to arbitrate, or even that the alleged refusal is demonstrated by a letter or other document. Rather, as noted above, Eurofins bases its position entirely on oral statements allegedly made by Operon's lawyers at a settlement

conference.  Again, Operon denies that the statements alleged by Eurofins were even made.  Operon's representatives made no statement in any way inconsistent with the position it now takes in this Court, which is that some potential claims unquestionably would be arbitrable while others may not be, and it is premature to determine whether *any* potential claim is subject to arbitration.  This cannot conceivably be regarded as a unequivocal refusal to arbitrate.  *See, e.g., Trans World Airlines, Inc. v. Air Line Pilots Ass'n*, 172 F.3d 921, 1998 WL 720712, at *1 (D.C. Cir. 1998) (unpublished table decision) ("TWA consistently maintained that arbitration was 'premature,' not that it would never arbitrate the matter.  In other words, TWA never unequivocally refused to arbitrate this matter. . . .").  As a matter of law, there is no valid basis for aborting the contractual 60-day negotiation process, which means the adversity of interest test cannot be satisfied at this point.

**B.    The requested declaratory judgment also could not provide specific, conclusive relief.**

Although the absence of an "adversity of legal interests" is alone fatal to Eurofins' declaratory judgment claim, the claim also fails the remaining two aspects of the *Step-Saver* ripeness test.  The second *Step-Saver* factor is the "conclusiveness of the judicial judgment" requested by the declaratory judgment plaintiff.  912 F.2d at 647.  The controversy presented by a declaratory judgment claim must be a "real and substantial" one that permits the Court to provide

24

"specific relief through a decree of a *conclusive* character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Armstrong v. Adams*, 961 F.2d at 412 (citation omitted) (emphasis in original). The Court must consider whether its judgment would "conclusively define and clarify the legal rights of the parties, or whether its decision would amount to no more than an advisory opinion." *Breitigan v. State of Delaware*, C.A. No. 02-1333-GMS, 2003 WL 21663676 at *4 (D. Del., July 16, 2003). As the Third Circuit has explained, "[a] declaratory judgment granted in the absence of a concrete set of facts would itself be a 'contingency,' and applying it to actual controversies which subsequently arise would be an 'exercise in futility.' " *Armstrong v. Adams*, 961 F.2d at 412 (citation omitted).

For at least two reasons, the declaratory judgment requested in this case could not be sufficiently specific or conclusive. First, by its own terms, the request for declaratory relief seeks only a limited, inconclusive judgment. The complaint seeks a declaratory judgment on only one aspect of the parties' disputes, requesting the Court to declare that "all disputes *arising out of or relating to Eurofins Ventures' claim that Operon (and Hudson and Weiss as guarantors) failed to make its required contribution under the Contribution Agreement* . . . are arbitrable." (First Amended Complaint, D.I. 4, Request for Relief, Section A) (emphasis added).

As demonstrated by the correspondence filed in support of the defendants' motion to dismiss, the alleged failure by Operon to pay its full capital contribution is only one of several disputed issues. Although Eurofins' complaint did not apprise the Court of the other disputes between Operon and Eurofins (or disputes involving Eurofins Finance, which was included as a plaintiff in the original complaint but then dropped), the parties also have disputes concerning what Operon views as the misuse of its $5 million capital contribution, the failure by Eurofins to use available resources to service Genomics' debts, and Operon's entitlement to indemnification for any losses or damages resulting from Genomics' failure to pay its debts. Also, each party has accused the other of committing fraud. Finally, the defendants Hudson and Weiss, who are not even parties to the agreement containing the arbitration provision, may themselves have claims to be asserted against Eurofins (aside from potential tort claims, Eurofins' indemnity obligation in the Contribution Agreement extends to Operon's shareholders). In short, the declaratory judgment requested by Eurofins would not remotely satisfy the conclusiveness test, because it would leave open the question whether all other aspects of the parties' disputes are subject to arbitration.

The requested judgment also could not provide adequately *specific* relief. As already discussed above in connection with the adversity of interest test, the question whether *any* aspect of the parties' disputes is arbitrable is not yet ripe,

26

because a condition precedent to arbitration has not been satisfied. Even assuming that the required settlement negotiations fail and arbitrability becomes a ripe issue, the question will be "whether *the specific dispute* falls within the substantive scope" of the arbitration provision.   *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (emphasis added). *See also In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions*, 133 F.3d 225, 230 (3d Cir. 1998) ("Because arbitration clauses are fundamentally a creature of contract law, the critical focus is on a clear intention to arbitrate *a specific claim or dispute* between the parties.") (emphasis added). At this point, it cannot be determined what specific claims may be asserted by any of the parties if the negotiation process is unsuccessful. Because Eurofins' request for a decree on arbitrability is premature, the Court cannot determine which specific potential claims are arbitrable, and which are not.

## C.    The requested decree would have no real utility.

The final *Step-Saver* factor is "the practical help, or utility," of the requested judgment.   912 F.2d at 647.   Stated differently, the Court should consider "the hardship to the parties of withholding court consideration." *Wyatt v. Virgin Islands*, 385 F.3d at 806 (citation omitted).   Like the other *Step-Saver* factors, this one weighs strongly against Eurofins' request for declaratory relief.

When Eurofins filed its lawsuit, the parties were approximately halfway through the 60-day negotiation process specified in their contract. Eurofins' declaratory judgment claim is simply a request for the Court to determine arbitrability *before* the 60-day period expires. In addition to being premature for the reasons already discussed, the decree sought by Eurofins would provide no real benefit and would alleviate no hardship.

The requested decree would provide no substantial benefit because, as already noted, it would leave unresolved the question whether other aspects of the parties' disputes are arbitrable. The decree also is totally unnecessary to prevent any hardship, because no hardship is imposed by waiting until the end of the 60-day negotiation period to determine whether any unresolved claims are subject to arbitration. There is no valid reason why Eurofins needs an answer to that question *in the middle* of the negotiation process. Regardless of the answer, the parties still have to attempt in good faith to settle their disputes through negotiations during the 60-day period, as they agreed in their contract.

**III.    Even if the case presented a justiciable controversy, declining to adjudicate the declaratory judgment claim would be appropriate.**

For the reasons discussed above, the Court lacks subject matter jurisdiction over Eurofins' declaratory judgment claim, because the claim does not present a ripe, actual controversy. Since no jurisdiction exists, the case does not present the question whether the Court should exercise its discretion not to adjudicate the

28

claim. Even if the Court had subject matter jurisdiction over the declaratory judgment claim, declining to hear the claim would be appropriate under the circumstances presented here.

The Declaratory Judgment Act states that courts "*may* declare" an interested party's rights. 28 U.S.C. § 2201(a) (emphasis added). Even where a declaratory judgment action presents a justiciable controversy, the Act "contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2001). The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 134 (citation omitted). Where declaratory relief is requested, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* (citation omitted).

A court should exercise its discretion to decline to grant declaratory relief "if it finds that a declaratory judgment action will not serve a useful purpose or is otherwise undesirable." *Delaware State Univ. Student Housing Found. v. Ambling Mgmt. Co.*, C.A. No. 07-610-MPT, 2008 WL 2278460, at *5 (D. Del., June 4, 2008) (citation omitted). *See also Bell Atlantic v. MFS Communications*, 901 F. Supp. at 850. In making this determination, the Court "must ask whether the requested declaratory judgment will (1) clarify and settle legal relations in issue

29

and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action." *Delaware State v. Ambling*, 2008 WL 2278460, at *5 (citation omitted).

The defendants will not repeat here their discussion of all the various reasons why the declaratory judgment sought by Eurofins would not "serve a useful purpose," would not "clarify and settle legal relations" between the parties, and would not conclusively "terminate the controversy." The defendants will simply again point out that (1) the declaratory judgment prematurely seeks a decree on arbitrability before the parties have even completed a contractually mandated negotiation process; (2) the parties need only wait until the end of the required 60-day negotiation period for any arbitrability issue to become ripe; (3) even assuming all disputes are not resolved through negotiations, any party could potentially assert claims not covered by the arbitration agreement; (4) Eurofins seeks a decree that only one aspect of the parties' disputes is arbitrable, leaving unresolved the question whether claims arising out of other disputes are subject to arbitration; and (5) Hudson and Weiss are not even parties to the contract that contains the arbitration provision, which means that, even before the arbitrability of *any* party's claims is ripe for determination, the Court would have to decide the arbitrability of potential claims to be asserted by non-signatories to the contract. For all of these reasons, or any one of them,

"considerations of practicality and wise judicial administration" should preclude the exercise of jurisdiction over Eurofins' claim.

Even aside from all other considerations, Eurofins' conduct in preemptively filing this action in the middle of the negotiation period would alone warrant a refusal to adjudicate its claim. Courts have recognized that declining to exercise jurisdiction over a declaratory judgment action may be appropriate where the circumstances indicate that it is an anticipatory action filed in bad faith, or that the action is an exercise in "forum shopping" or "forum avoidance." *See, e.g., Equal Employment Opportunity Comm'n v. Univ. of Pennsylvania*, 850 F.2d 969, 972 (3d Cir. 1988); *Wilderman v. Cooper & Scully, P.C.*, 428 F.3d 474, 476 (3d Cir. 2005); *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 749, n.25 (E.D. Pa. 2005). Eurofins' action implicates both concerns.

In this circuit, courts have "found evidence of bad faith when the parties are involved in settlement negotiations, one party lays out a deadline by which they will initiate litigation should settlement not be reached, and just prior to that deadline, the other party preemptively files a declaratory judgment action." *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc.*, 416 F. Supp. 2d 1048, 1052 (E.D. Pa. 2006) (citing pertinent cases). Here, Operon set no deadline for initiating litigation, but the parties' contract itself established a deadline for resolving disputes through negotiations. In anticipation that Operon might file suit against

31

Eurofins if the 60-day negotiation period expired without a settlement, Eurofins sought to preempt such a suit by filing this declaratory judgment action.

If the negotiation process required under the contract proves unsuccessful, each party will then have the option of initiating an arbitration proceeding, filing an action under the Federal Arbitration Act to compel arbitration, or filing a lawsuit asserting its claims. If any party seeks to pursue its claims in court, the opposing party will have the option of moving to stay or dismiss the action pending arbitration of some or all claims. Preemptively requesting a decree on arbitrability not only is inappropriate for all of the reasons discussed above, it is totally unnecessary. If the arbitrability of any claim becomes a ripe issue, the customary methods for resolving that issue will be available and wholly adequate.

Finally, the circumstances here strongly indicate that, if not shopping for what it believes to be a favorable forum, Eurofins is seeking to avoid what it regards as an unfavorable forum. Hudson and Weiss are residents of Alabama, Operon is headquartered in that state, and the parties' transaction was closed there. As a matter of public policy, Alabama applies a narrow standard for determining when the Federal Arbitration Act is enforceable. *See, e.g., Old Republic Ins. Co. v. Lanier*, 644 So.2d 1258, 1262 (Ala. 1994). Even where an arbitration provision applies, Alabama courts will not enforce a punitive damages exclusion such as the

one` contained in the contract in this case. *See e.g., Ex parte Celtic Life Ins. Co.*, 834 So.2d 766, 766-67 (Ala. 2002).

With the candor it deemed appropriate for good faith settlement discussions, Operon informed Eurofins at their settlement conference that Operon does not concede that all potential claims are subject to arbitration, and that the parties' agreement does not foreclose the possibility of a suit in state or federal court in Alabama. The next day, Eurofins filed this action, on the pretext that Operon had unequivocally refused to arbitrate any aspect of the parties' disputes. This transparent attempt to avoid defending a suit in Alabama is still another reason why this action should be dismissed.

## CONCLUSION

For the reasons discussed above, the defendants, Operon Holdings, Inc., *et al.*, request that the Court dismiss the declaratory judgment claim for lack of subject matter jurisdiction. Alternatively, the Court should exercise its discretion not to adjudicate the claim. Because all other claims asserted by Eurofins are alternative or contingent claims to be considered only if Eurofins prevailed on its declaratory judgment claim, those claims also should be dismissed.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen C. Carlson
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

George E. Knox, Jr.
P. Scott Arnston
Jeffrey T. Kelly
Lanier Ford Shaver & Payne, P.C.
200 West Side Square
Suite 500, P.O. Box 2087
Huntsville, AL 35804
(256) 535-1100

Dated: August 22, 2008
879413

By: _____
        Philip A. Rovner (#3215)
        Suzanne M. Hill (#4414)
        Hercules Plaza
        P. O. Box 951
        Wilmington, DE 19899
        (302) 984-6000
        provner@potteranderson.com
        shill@potteranderson.com

*Attorneys for Defendants*
*Operon Holdings, Inc., James Hudson and*
*Patrick Weiss*

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 22, 2008, the within

document was filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following; that the document was served on the

following counsel as indicated; and that the document is available for viewing and

downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

> Richard E. Kirk, Esq.
> Stephen Brauerman, Esq.
> Bayard, P.A.
> 222 Delaware Avenue, Suite 900
> P.O. Box 21130
> Wilmington, DE  19899
> rkirk@bayardfirm.com; sbrauerman@bayardfirm.com

I hereby certify that on August 22, 2008 the foregoing document was sent by

E-mail to the following non-registered participants:

> Daniel P. Goldberg, Esq.
> Michael Hanin, Esq.
> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, NY  10019
> dgoldberg@kasowitz.com; mhanin@kasowitz.com

> /s/ Philip A. Rovner
> Philip A. Rovner (#3215)
> Potter Anderson & Corroon LLP
> Hercules Plaza, P.O. Box 951
> Wilmington, Delaware 19899
> (302) 984-6000
> E-mail: provner@potteranderson.com